IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTINA ILIADIS,

                Plaintiff,                OPINION AND ORDER

    v.

                                         19-cv-232-wmc

FOUR LAKES EDUCATION, INC.,
K12, INC., MCFARLAND SCHOOL
DISTRICT, NICH SUTHERLAND, and
CINDY WORDEN,

                Defendants.

On March 25, 2019, plaintiff Christina Iliadis filed suit against defendants alleging violations under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e(k), *et seq.*, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* In a series of email exchanges from October 25 through November 7, 2019, the parties purportedly reached a settlement agreement. However, defendants K12, Sutherland, and Worden, which the court will refer to collectively as "K12," have refused to pay plaintiff Iliadis the amounts due under the agreement until the language of a separate, contemplated mutual release between the defendants has been agreed to and executed. In response, Iliadis and all the other defendants Four Lakes Education, McFarland School District, and Insperity filed motions to enforce the settlement agreement under federal law. (Dkt. ##72, 77, 90.) Plaintiff also seeks attorney fees associated with her motion for breach of the settlement agreement. For the reasons that follow, the court will grant the motions to enforce the settlement agreement. Because K12's dispute with the other defendants over mutual release language fell outside the terms of their written agreement with plaintiff, the court

will award 5% prejudgment interest on the sum from the date due until paid under Wis. Stat. § 138.04. Plaintiff's request for attorney fees and costs under 28 U.S.C. § 1927 will be denied as K-12s position was not unreasonable or vexatious. Finally, the court will withhold entering judgment and closing this case pending a hearing on the defendants' apparent, if hard to understand, ongoing dispute over the language of their mutual release.

BACKGROUND

On October 25, 2019, Attorney David Hanus, representing Four Lakes, sent plaintiff an offer to settle. (Olson Decl., Ex. A (dkt. #74-1) 11.) That email included the basic terms of an offer of settlement, essentially contemplating that the defendants would pay plaintiff a certain amount and plaintiff would release all claims against defendants up to the date of the agreement's execution. The parties' attorneys then exchanged a series of emails over the next few weeks proposing minor revisions to the draft agreement. This exchange culminated with an email dated October 30, 2019, from Lori M. Lubinsky, attorney for defendants K12, advising as follows:

> Attached is a draft of the settlement agreement. The defendant's clients may have some limited changes (I am still waiting to hear from my client, for example), but the substance is all there.
>
> In terms of the settlement checks, a payroll check will result in taxes to the employer so that is not going to work. We can issue you one check from one of our firms and you can distribute the money, or we can issue you two checks, one to your client with a 1099 and one to your firm. The sooner we figure this out, the sooner the checks can be issued, the sooner you and your client get paid.
>
> Let us know what works on your end. Note that Exhibit A is the letter you and David were working on and I don't have

2

> that, so it will need to be attached.

(*Id*. at 10.)

On November 1, 2019, Attorney Lubinsky sent a follow-up email to plaintiff's attorney, Alan C. Olson, advising that, in addition to confirming the defendants' need to keep the proposed indemnification language and addressing withholding for the portion of the settlement payment allocated to wages, she was again attaching

> the Settlement Agreement with one additional change to address the fact that there will be a separate mutual release between the defendants. I assume you will have no problem with this one added sentence.

(*Id*. at 9.) The mutual release provision added to Article 2 of the agreement read: "A release amongst and between Insperity, K12, Inc., Four Lakes and McFarland is contained in a separate document titled Mutual Release." (Olson Decl., Ex. B (dkt. #74-2) 2.)

Through a flurry of subsequent emails on November 6 and 7, the parties then agreed on additional revisions to the draft agreement related to the allocation and apportionment of the payment. (Olson Decl., Ex. A (dkt. #74-1) 3-6.) On November 7 at 2:04 p.m., Olson next sent an email to all parties stating, "Attached is the last version of the Agreement, with the new allocation and reduction of the payment deadline to 10 days. Also attached is a clean version of the same document." (*Id*. at 4.) Attorney Lubinsky replied at 2:07 p.m. stating:

> Christina's name is spelled incorrectly, but otherwise this is okay.
>
> I can get my client's check issued within the allotted time but I am not sure about the payroll check. Alan, I will get a check cut out ASAP and send it to you payable to your trust account for my client's portion.

3

(*Id*. at 3.)

Plaintiff Iliadis signed the agreement waiving her claims in this lawsuit that same day, November 7, and her attorney sent out copies to all parties on November 8. Defendants Four Lakes Education, Inc., and McFarland School District also paid Iliadis and/or her attorney their respective allocations of the settlement amount by November 15 as required by Article 1 of the parties' settlement agreement. However, the K12 defendants did not. After questioning by Attorney Olson on behalf of plaintiff as to why they had not paid their allocation of the settlement, Attorney Lubinsky disclaimed the existence of a settlement agreement, ostensibly because the defendants had not yet executed the mutual release referenced in Article 2.

OPINION

I. **Existence of an Enforceable Agreement**

As an initial matter, the parties disagree on whether federal or Wisconsin law governs the settlement agreement. Certainly, the suit arises under federal law, specifically Title VII and the FMLA. Not only does defendant K12 rely on a series of cases suggesting that the enforceability of settlement agreements is governed by state law, including this court in *Jones v. Conagra Grocery Products Co., LLC*, No. 07-CV-638-BBC, 2009 WL 10725959 (W.D. Wis. Aug. 21, 2009), but there is a choice of law provision in Article 7 of the parties' agreement that identifies Wisconsin law as governing the agreement. While the parties' disagreement could be meaningful inasmuch as the standards for settlements under Title VII lawsuits differ under federal versus state law, including the requirement of

4

a writing under Wis. Stat. § 807.05, a choice of law analysis in this case is unnecessary here, since it is not ultimately outcome determinative. *See Glaeske v. Shaw*, 2003 WI App 71, ¶ 21, 261 Wis. 2d 549, 661 N.W.2d 420 (explaining that a court need not engage in choice-of-law analysis if the choice is not outcome determinative); *In re Air Crash Disaster*, 644 F.2d 594, 605 & n.2 (7th Cir.1981) (describing "false conflict" doctrine, in which an identity of substantive law between competing jurisdictions renders it unnecessary to deal with choice of law issues at all). As explained below, there is a binding agreement between plaintiff and defendants under either federal or Wisconsin law.

### A. Meeting of the Minds

An enforceable settlement agreement in Wisconsin must result from a meeting of the minds. *HSBC Mortg. Servs. V. Daya*, No. 16-CV-80-JPS, 2016 WL 7156551, *8 (E.D. Wis. Dec. 7, 2016). K12 argues the failure of defendants to reach terms of a mutual release among themselves demonstrates that there was no meeting of the minds on the settlement agreement. However, this argument is undermined by K12's attorney Lubinsky's own words. First, in forwarding a draft of the settlement agreement on October 30, 2019, she represents to plaintiff and the other defendants that the "substance [of the agreement] is all there." (Olson Decl., Ex. A (dkt. #74-1) 10.) Even more definitively, in an email response to the final "clean" version of the agreement sent to the parties by plaintiff's attorney Olson, she states, "Christina's name is spelled incorrectly, but otherwise this is okay." (*Id.* at 3.) She also represented that her client would cut a check "ASAP." (*Id.*)

Still, K12 persists that there was no agreement because there was no meeting of the minds on all material terms of the agreement. This argument rests on an assumption that

5

the mutual release was material to the settlement agreement between plaintiff and defendants. In support, K12 relies upon *American National Property & Casualty Co. v. Nersesian*, 2004 WI App 215, 277 Wis. 2d 430, 689 N.W.2d 922, and *United States v. Orr Construction Co.*, 560 F.2d 765 (7th Cir. 1977), to argue that preliminary agreements to be followed by the negotiation of additional terms are not in themselves completed contracts. While a correct description of these cases, neither case supports K12's position that the settlement agreement here was in any sense preliminary. In *Nersesian*, the plaintiff's attorney agreed to a preliminary settlement, but the attorney's notice explicitly included reference to additional, contingent terms, including approval by the worker's compensation carrier. *Nersesian*, 2004 WI App, at ¶ 19. Further, the defendant's offer required the signing of a release as part of the required acceptance, a term that was not met by the Nersesians. *Id*. at ¶ 17. Similarly, in *Orr*, the Seventh Circuit found that there was no enforceable agreement because it required that all parties provide "proper legal releases" as part of the settlement, and there was no meeting of the minds on what that term meant. *Orr*, 560 F.2d at 769.

Unlike in *Nersesian* and *Orr*, the contemplation of a mutual release here was *not* a contingent term of the settlement agreement. Instead, the agreement simply states that "[a] release amongst and between [defendants] is contained in a separate document titled Mutual Release." On its face, this provision is *not* material to the settlement agreement between plaintiff and defendants, but rather "amongst and between" defendants. At most, that sentence is a representation *by defendants to* plaintiff that such an agreement exists and is not an impediment to the final settlement. Moreover, the only time plaintiff was at all

engaged in the discussion about the mutual release was through the November 1st email from Attorney Lubinsky to Attorney Olson indicating the reference to a separate release between the defendants. (Olson Decl., Ex. A (dkt. #74-1) 9 ("Attached is the Settlement Agreement with one additional change to address the fact that there will be a separate mutual release between the defendants. I assume you will have no problem with this one added sentence.").) The apparent failure of defendants to agree and enter into an *additional* release between themselves as presented has no effect on the settlement agreement they reached with plaintiff. Similar to *Dillard v. Starcon International, Inc.*, 483 F.3d 502 (7th Cir. 2007), the parties have reached agreement on material terms of the settlement and the defendants' additional negotiations over a release among each other does not indicate lack of agreement on those terms. "The materiality of additional written terms introduced after an oral agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms." *Id*. at 508. Stated another way, "[f]ailure to agree on those terms does not mean the contract does not exist, only that it exists without those terms." *HSBC*, 2016 WL 7156551, at *14. Even the *Orr* decision, which defendants K12 cites in support of their position, highlights the "principle of contract law that a contract is not invalid simply because it calls for the parties to reach another agreement in the future." *Orr*, 560 F.2d at 769. This case might well be different if the language K12 had proposed stated that the settlement with plaintiff was "contingent upon defendants entering into" or "void unless defendants agreed upon" a binding release between themselves, but simply representing to plaintiff that such a separate release "is" fails to put her on notice that the entire agreement depends upon that statement being literally true,

7

rather than a responsibility of defendants.[1] Instead, the settlement agreement as written and agreed upon by all parties was complete in and of itself, with K12's counsel acknowledging that "the substance is all there," even before she included "one additional change to address the fact that there will be a separate release between the defendants."

**B. Executed by the Parties**

Assuming the settlement agreement is governed by Wisconsin law, there remains one additional hurdle for plaintiff to clear. Wisconsin Statute § 807.05 requires any "agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action" be entered in the minutes or recorded as part of court proceeding or be "made in writing and subscribed by the party to be bound thereby *or* the party's attorney" (emphasis added). Obviously, the agreement terms in question were finalized via email exchanges and never recorded with the court. Therefore, in order to be binding on all parties, it must be (1) in writing and (2) subscribed by the parties or their attorneys. *Waite v. Easton-White Creek Lions, Inc. (In re Estate of Johnson)*, 2006 WI App 19, ¶ 6, 289 Wis. 2d 100, 709 N.W.2d 88.

As to the first requirement, there is *no* question that the agreement is in writing. Attorney Olson sent to all of the parties a "clean version" of the final agreement on

---

[1] This is not to say that K12 and its counsel may not have had contemplated exactly that requirement by using the present tense "is," but they simply failed to put the other parties on notice of that desire, much less obtained agreement to this additional requirement. The best evidence of this failure is the fact that plaintiff *and* all other defendants proceeded to fulfill their remaining obligations under the agreement. Regardless, there is *nothing* in that sentence or anywhere else in the agreement or emails between the parties' counsel that required *plaintiff* to assure defendants fulfilled this representation.

8

November 7, incorporating all of the various revisions requested and agreed to by the parties. Not only was there no subsequent objection to its terms by any of the parties, including K12, but plaintiff Iliadis signed the agreement and defendants Four Lakes and McFarland also performed under its terms by timely paying the amounts each owed to plaintiff.

As for the second requirement, K12 argues that the written agreement was not "subscribed" as required by § 807.05. In support, K12 principally relies on *Jones v. Conagra Grocery Products Co., LLC*, No. 07-CV-638-BBC, 2009 WL 10725959 (W.D. Wis. Aug. 21, 2009), holding that a party cannot subscribe to an agreement through conduct alone. Defendant K12 argues that a party's assent must be formalized in some way on the document itself. In *Jones*, this court in turn relied on the Wisconsin Court of Appeals' decision in *Laska v. Laska*, 2002 WI App 132, 255 Wis. 2d 823, 646 N.W.2d 393, which held that § 807.05 required more than mere *oral* agreement, explaining that "the term 'subscribed' cannot be read to dispense altogether with a written indication of assent." 2002 WI App 132, at ¶ 12. The court in *Laska*, however, stopped short of requiring that the writing be on the agreement itself, and more recent cases interpreting the requirement of a subscription under § 807.05 have rejected such a requirement.

To begin, in *In re Estate of Johnson*, 2006 WI App 19, the Wisconsin Court of Appeals explained that § 807.05 is intended to serve the same purpose as a statute of frauds and, therefore, should be construed to require reliable evidence of a valid contract and to prevent the enforcement of contracts that were never completed. *Id.*, at ¶ 10 (citing *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 433 N.W.2d 6544 (Ct. App. 1988)). In *Kocinski v. Home*

9

*Insurance Company*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990) (*Kocinski II*), the Wisconsin Supreme Court similarly concluded that a signature is distinct from a subscription, meaning a subscription could take the form of the printed name of the party's attorney. Similarly, in *In re Estate of Johnson*, the court explained that "a party's or attorney's typed or printed name, if affixed with proper authority" may satisfy the subscription requirement. Since *In re Estate of Johnson*, federal and state courts have clarified that even emails from counsel authorized to act on behalf of their clients can satisfy the subscription requirement. *See, e.g.*, *Sands v. MH Private Equity Fund, LLC*, 2011 WL 978238, 2011 WI App 58, ¶ 14, 332 Wis. 2d 806, 798 N.W.2d 320 (unpublished)) ("Here, the attorneys' e-mails demonstrate an agreement on the material settlement terms . . . . The e-mails create a binding settlement agreement[.]"); *Centrifugal Acquisition Corp. v. Moon*, No. 09-C-327, 2013 WL 352595, at *1 (E.D. Wis. Jan. 29, 2013) ("This email exchange proves the existence of a settlement agreement, even though there were some 'details' to be worked out. It also satisfies the 'written subscription' requirement of Section 807.05, Wis. Stats."); *HSBC*, 2016 WL 7156551, at *9 ("In this case, the parties' exchange of emails . . . demonstrate that they reached a binding, enforceable settlement agreement.").

In the instant case, Attorney Lubinsky unambiguously assented via email to the final, "clean" version of the settlement agreement on behalf of defendants K12, commenting only that plaintiff's name was spelled incorrectly and providing assurances to "do our best to expedite" payment. In doing so, K12 subscribed to the agreement in a manner sufficient to satisfy § 807.05, as did plaintiff by formally signing the agreement and the other defendants by similar email assents and tender of their respective payments.

Whether done on the final agreement or by email, that agreement and related emails not only demonstrate a plain and written meeting of the minds with respect to the terms of settlement between the plaintiff and defendants, but their subscription as well. Therefore, it is a valid settlement, and the court will grant the parties' motions to enforce it.

## II. Release Amongst the Defendants

While the "release" between the defendants referenced in Article 2 of the settlement agreement is not a material term of settlement between *plaintiff* and defendants, it does represent an obligation to come to an agreement on the language of a release. Based on the exchange between counsel, the court is fairly astounded that this has not already been accomplished. Accordingly, the court will retain jurisdiction and direct counsel for all defendants to meet and negotiate in good faith a release within twenty-one days. Failing that, defendants shall file with the court on or before March 10, 2020, either jointly or severally a proposed release and explanation of the remaining dispute, and defendants' counsel and a principal for each defendant will appear before this court for an evidentiary hearing on March 20, 2020, at 1:00 p.m. to hammer out a binding release and consider whether sanctions are appropriate under 18 U.S.C. § 1927 or Article 2 of the parties' agreement.

## III. Request for Sanctions

Finally, in her motion, plaintiff seeks an award of attorney fees associated with the

motion to enforce "pursuant to 18 U.S.C. § 1927."[2] However, as set forth above, the issues related to the applicability and interpretation of Wis. Stat. § 807.05 were sufficiently disputed that defendant K12 cannot be said to have "unreasonably and vexatiously" extended these proceedings, at least to date. As such, the court will deny that request, while awarding prejudgment interest plainly due under Wis. Stat. § 138.04.

ORDER

IT IS ORDERED that:

1) Plaintiff Christine Iliadis's motion to enforce settlement (dkt. #72), defendants' Four Lakes Education, Inc. and McFarland School District's motion to enforce settlement (dkt. #77), and defendant Insperity PEO Services, L.P.'s motion to enforce settlement (dkt. #90) are GRANTED. Plaintiff's motion for sanctions against defendant K12 is DENIED.

2) All other pending motions are DENIED AS MOOT.

3) All deadlines in this case are STRUCK.

4) In light of the parties' settlement agreement, this action between plaintiff and defendants will be dismissed without prejudice subject to the following conditions:

   a. defendant K12 shall pay 5% per annum interest under Wis. Stat. § 138.04 to plaintiff on all amounts due from the date set forth in the parties' agreement until paid;

   b. defendants' counsel shall meet and negotiate in good faith the release contemplated in Article 2 of their agreement on or before February 18, 2020; and

   c. failing that, defendants shall file with the court, either jointly or severally, a proposed release and explanation of the remaining dispute between defendants on or before March 10, 2020, and both defendants' counsel

---

[2] There is a provision in the parties' agreement, Article 11, that permits parties to recover attorney's fees associated with bringing a "subsequent action or proceeding" to enforce the agreement, but plaintiff only seeks relief under § 1927, perhaps recognizing that no "subsequent action" was necessary,

and a principal for each defendant shall appear before this court for an evidentiary hearing at 1:00 p.m. on March 20, 2020, as set forth above.

Entered this 28th day of January, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge